UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP AMERICA PRODUCTION COMPANY, BP EXPLORATION & PRODUCTION INC., AND AMERICAN HOME ASSURANCE COMPANY | * | CIVIL ACTION NO.  09-6218 |
| | * | SECTION "L," MAGISTRATE: 4 |
| | * | JUDGE ELDON E. FALLON |
| versus | * | MAGISTRATE KAREN WELLS ROBY |
| NATIONAL OILWELL VARCO, LP, NATIONAL OILWELL VARCO, INC., NATIONAL OILWELL NORWAY AS, HYDRALIFT AS, HYDRALIFT AMCLYDE, INC., AND HYDRALIFT, INC. | * | |
| | * | |
| | * | |

**MEMORANDUM IN OPPOSITION TO MOTION TO TRANSFER**

Plaintiffs, BP America Production Company ("BP America"), BP Exploration & Production Inc. ("BPX&P"), and American Home Assurance Company ("American Home"), oppose the motion to transfer filed by defendants, National Oilwell Varco, L.P., Hydralift Amclyde, Inc., and Hydralift, Inc., for the reasons set forth below.

**INTRODUCTION AND BACKGROUND**

This lawsuit arises out of a catastrophic event during which a drilling rig slid off and over the side of a platform located on the Outer Continental Shelf off the coast of Louisiana. After the

incident, the plaintiffs conducted an investigation into its cause and found serious deficiencies in the design and pre-sale testing of the brake clamps that were used to secure the rig to the platform.

On September 9, 2009, the plaintiffs filed this lawsuit against National Oilwell Norway, AS, National Oilwell Varco, LP, Hydralift Amclyde, Inc, Hydralift, Inc., National Oilwell Varco, Inc., and Hydralift AS (collectively referred to as the "NOV defendants") and alleged fault on the part of the defendants based upon their involvement in the design, manufacture, installation, maintenance, repair, modification, and/or training concerning the use of brake clamps used to secure the rig to the BP Mad Dog platform. Although the plaintiffs believed the primary defendant would be a Norwegian company, National Oilwell Norway, AS (formerly known as Hydralift, ASA), since it was the company that designed, manufactured, tested, certified, and installed the brakes, they also named the other defendant companies because of their tangential involvement with the facts leading up to the incident.

Because Louisiana law will apply as surrogate federal law pursuant to the Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1331, the plaintiffs retained counsel in Louisiana to represent them and purposefully filed suit in Louisiana, their forum of choice. The plaintiffs anticipated that the two Norwegian corporations named as defendants might file motions to dismiss for lack of personal jurisdiction in Louisiana. Although the plaintiffs believed such motions would be unsuccessful, they feared that if granted, the timing of the ruling, coupled with Louisiana's one year tort limitations period, could preclude them from filing another action in another forum. Consequently, in an abundance of caution, and in keeping with a long line of cases recognizing the legal propriety of filing protective suits, the plaintiffs

concluded that filing a protective suit in Texas state court made sound legal sense.[1] Consequently, the day after they filed the Louisiana lawsuit, the plaintiffs filed a second, identical suit in Harris County District Court (the "Texas lawsuit.").

On October 16, 2009, some of the NOV defendants removed the Texas lawsuit to the Southern District of Texas. Based on the "first-to-file" rule, the plaintiffs filed a motion to stay the Texas lawsuit. The NOV defendants opposed the stay and filed the motion at issue requesting that this Court transfer the matter to the Southern District of Texas so that it could be consolidated with the Texas lawsuit. Based on the "first-to-file" rule, the Texas federal court has stayed the Texas lawsuit, pending this Court's ruling on the defendants' motion to transfer.[2]

---

[1]    Federal courts not only *condone* the filing of "protective suits," but recognize that prudence *requires* the filing of protective suits to protect plaintiffs' rights when jurisdiction is not certain in the chosen forum. *Shute v. Carnival Cruise Lines, Inc.,* 804 F. Supp. 1525 (S.D. Fla. 1992). *See also Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1201 (4th Cir. 1993)("Elementary prudence would have indicated to [plaintiff's] lawyer that he must file a protective suit in Michigan [where jurisdiction properly lay] because there was only a … probability of obtaining personal jurisdiction in Wisconsin over the defendants."); *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581, 583 n.4 (5th Cir. 1982)(noting pendency of protective suit); *Wheeling-Pittsburgh Steel Corp. v. Donovan Wire and Iron Co.,* 614 F.2d 945 (4th Cir.), *cert. denied,* 449 U.S. 828, 101 S.Ct. 93 (1980)("Prudent lawyers should not be faulted for guarding their clients against possible pitfalls" such as a court's reexamination of jurisdiction at any stage of the trial or appellate proceedings resulting in a plea of limitations in another forum without the benefit of a protective action. "A court's concern over the institution of actions on the same claim in more than one district can be alleviated by an order staying the proceedings."); *Valentin v. Ocean Ships, Inc.,* 38 F. Supp. 2d 511, 513 (S.D. Tex. 1999)(criticizing plaintiff's counsel for failing to file a protective suit in another jurisdiction once defendant filed a motion to dismiss for lack of personal jurisdiction); *Cote v. Wadel,* 796 F.2d 981 (7th Cir. 1986)(noting that plaintiff should have filed a protective suit in Michigan instead of relying on the "probability" of obtaining personal jurisdiction in Wisconsin); *Obermeyer v. Gilliland,* 873 F. Supp. 153 (C.D. Ill. 1995)(where jurisdiction was questionable, "the better course of action would have been to file a protective suit"); *Price v. Point Marine, Inc.,* 1993 WL 30336 (E.D. La. 1993), *aff'd,* 22 F.3d 1094 (5th Cir. 1994)(criticizing counsel for failing to file a protective suit in Louisiana before the limitations period had expired when personal jurisdiction was contested in Florida); *Custom Fuel Services, Inc., Div. of Ingram Barge Co. v. Brinkerhoff Oil Trading Co.,* 1989 WL 104099 (E.D. La. 1989)(noting plaintiff's filing of a protective suit in a Texas court and the deference given to the first filed suit).

[2]    A copy of Judge Atlas' order staying the Texas federal court lawsuit is attached as Exhibit "A."

## FACTUAL BACKGROUND

On March 15, 2002, BP America entered into a contractual relationship with Pride Offshore, Inc. ("Pride") pursuant to which Pride was to design, construct, and install a drilling rig on a spar platform used to develop the "Mad Dog Field" located in Green Canyon Block 782 approximately 190 miles south of New Orleans.  Pride had one of its corporate affiliates, a company called Petroleum Supply Company, contract with one of the defendants in this case, Hydralift, Inc., to provide the brake clamps that would hold the drilling rig on the Mad Dog platform.  Although the details of the transaction are unclear, Hydralift, Inc. arranged for its Norwegian parent company, Hydralift ASA (now known as defendant, National Oilwell Norway, AS) to design and manufacture the brake clamps for the Mad Dog platform.

Documentary evidence establishes that Hydralift ASA performed calculations to check the required clamping force capacity of the brakes as well as the structural strength of the brake assembly,[3] conducted testing of the brakes,[4] and issued a Declaration of Conformity for the brakes.[5]  Documents attached to this memorandum relating to the design, testing, and certification of the brakes establish that several Norwegian witnesses who were involved in the design calculations and testing of the brake clamps will be key witnesses in this products liability case.  Moreover, after designing, manufacturing, and selling the brakes, the Norwegian parent company then sent a representative, Roger Kjoniksen, from Kristiansand, Norway to install and

---

[3]     See page 3 of Exhibit "4" to Exhibit "B."

[4]     See pages 00203 - 00213 of Exhibit "3" to Exhibit "B."

[5]     See page 00104 of Exhibit "3" to Exhibit "B."

commission the brakes on the Mad Dog platform.[6] Obviously, Mr. Kjoniksen will also be a key witness.

In addition to Mr. Kjoniksen and the Norwegian engineers involved in the design and testing of the brakes who will undoubtedly be the primary witnesses to testify at trial, there are likely even more Norwegian witnesses who played a critical role in the events leading up to the failure of the brake system because the Hydralift ASA User Manual states that except for minor maintenance corrections, no repairs or modifications should be carried out without prior written approval from Hydralift ASA.[7] At present, the identities of the Norwegians who approved of repairs or modifications are unknown; however, the Pride equipment history reports reveal that, in July 2006, some of the parking brakes were modified at the "direction of NOV representative, Joseph Minix."[8]

## LAW AND ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), a court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice *** to any other district or division where it might have been brought." Thus, the factors relevant in deciding a motion to transfer under Section 1404(a) are: (1) convenience of the parties and the witnesses, (2) the interests of justice, and (3) whether the civil action might have been brought in the district to which the moving party requests a transfer. 28 U.S.C. § 1404(a).

In a motion to transfer venue under § 1404(a), the moving party bears a heavy burden of demonstrating why the relevant factors "clearly favor such a change." *TV-3, Inc. v. Royal Ins.*

---

[6]     See Exhibit "5" to Exhibit "B."

[7]     See page 00012 of Exhibit "3" to Exhibit "B."

[8]     See Exhibit "6" to Exhibit "B."

*Co. of Am.*, 28 F. Supp. 2d 407, 411 (E.D. Tex. 1998). The quantum of proof necessary has sometimes been described to be as stringent as "clear and convincing evidence." *Id.* at 411.

## A.     **Convenience of the Parties and Witnesses**

The defendants' arguments that this matter should be transferred from New Orleans to Houston for the convenience of the parties and witnesses are unpersuasive for numerous reasons explained below.

In support of their motion to transfer, the defendants have provided a single affidavit from Svein Stubstad and various lists of anticipated witnesses along with where they reside/work (or in some cases where they are *believed* to reside/work). The defendants offer virtually no detail as to the nature of the testimony expected to be offered by the various lists of witnesses. The defendants have not provided affidavits from any of the individuals they have listed (aside from Mr. Stubsted) indicating what specific testimony they might offer, they have not explained why such testimony is important or relevant, and they have not indicated that such testimony is disputed. Just listing the individuals, with nothing more, is insufficient. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Hupp v. Siroflex of America, Inc.,* 848 F. Supp. 744, 749 (S.D. Tex. 1994). *See also Fletcher v. Southern Pacific Transp. Co.,* 648 F. Supp. 1400, 1402 (E.D. Tex. 1986). There must be proof that the individuals listed by the defendants are indeed *key* fact witnesses whose convenience should be assessed in this analysis. Evaluation of the convenience factors is not a battle of numbers, but should consider the content and quality, rather than quantity of their testimony. *Young v. Armstrong World Industries, Inc.*, 601 F. Supp. 399, 401-2 (N.D. Tex. 1984).

Although the defendants have argued to this Court that the majority of the fact witnesses reside in Houston, given that the brakes were designed, manufactured, tested, and certified in

-6-

Norway, and, additionally, that a Norwegian representative installed and commissioned the brakes, the *key* witnesses in this products liability case reside in Norway, not Houston, Texas. The following is a list of the key witnesses involved with the design, manufacture, testing, and installation of the brakes:

- Frode Jenson (FRJ) – performed calculations used in the design of the brakes
- Kirsti Krauss (KIK) – checked the design calculations for the brakes
- Eddie Preston (EDP) – created the technical specifications for the brakes
- Halvard Aas (HLA) – approved the manufacturing record book, user manual, calculations for parking brake, and technical description for parking clamp
- Odd Einar Eiksa (OEE) – was the project engineer who checked the user manual and was present during the factory testing
- Roger Kjaniksen – installed and commissioned the brakes on the platform in the summer of 2004.

The defendants have admitted that each of the above is located in either Kristiansand, Norway or Leeds, United Kingdom.[9]

The defendants can hardly argue that it would be any more convenient to the above witnesses to litigate this matter in Houston, Texas than in New Orleans, Louisiana. Indeed, New Orleans is actually closer to National Oilwell Norway, AS' corporate headquarters in Kristiansand, Norway (4,621 miles) than Houston is (4,784 miles).[10] Moreover, there are 33 flights each day from Kristiansand, Norway to New Orleans, Louisiana.[11]

---

[9]    See pages 14-15 of defendants' memorandum.

[10]    See Exhibit "C."

[11]    See Exhibit "D."

In addition to the National Oilwell Norway, AS employees who can travel to New Orleans to attend trial just as easily as they can travel to Houston, another defendant in the case, and one of the moving parties, is Hydralift Amclyde, Inc. Not only is Hydralift Amclyde, Inc. registered to do business in Louisiana, it has offices in Covington, Louisiana.[12] The defendants can hardly argue that trial in New Orleans, Louisiana would be inconvenient to Hydralift Amclyde, Inc.

Yet another defendant, National Oilwell Varco, L.P. (as successor to Hydralift, Inc. and in its own capacity as the presumed employer of Joseph Minix), is one of the nation's largest corporations and has operations throughout the United States and overseas.[13] It is registered to do business and has offices in Louisiana.[14] Trying a case in New Orleans hardly causes much inconvenience to a global company with assets and operations dispersed throughout the United States and the world, including Louisiana. Moreover, given the short distance between New Orleans and its corporate headquarters in Houston, any inconvenience is minimal.

Section 1404(a) "was designed and reserved for those instances where the transfer was sought to a District Court **substantially distant** from the district where the action had been instituted; otherwise it is difficult to imagine that there could be real inconvenience to the parties or witnesses." *Jenkins v. Wilson Freight Forwarding Co.,* 104 F. Supp. 422 (S.D.N.Y. 1952)(emphasis added). As the court in *Flotsam of California, Inc. v. Huntington Beach Conference and Visitors Bureau,* 2007 WL 1152682 (N.D. Cal. 2007),[15] explained: "travel by

---

[12]     See Exhibit "E."

[13]     See Exhibit "F."

[14]     See Exhibit "G."

[15]     A copy of this decision is attached as Exhibit "H."

-8-

air from the Huntington Beach area to San Francisco for trial or other proceedings does not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum." Numerous other courts have held similarly when the distance to be traveled is an easy commute by air. *See, e.g., Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7 (2nd Cir. 1995) ("forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel"); *Progressive Plastics, Inc. v. Nat'l Liquid Packaging, LLC,* 2007 WL 593555 at *2 (N.D. Ohio 2007)(denying motion to transfer since "there is no significant overall difference between Cleveland and Chicago" and because it is "an easy commute").[16]     *See also, Leesona Corp. v. Duplan Corp.,* 317 F. Supp. 290 (D.R.I. 1970)("additional two hundred miles which defendants' witnesses will have to travel, if trial of this case remains in Rhode Island, is insignificant in terms of additional expense, cost, or time, and therefore lends no support to the motion to transfer"); *Paragon Internat., N. V. v. Standard Plastics, Inc.*, 353 F. Supp. 88 (S.D.N.Y. 1973)(notwithstanding that no party resided in New York and that the citizenship of all defendants was in Pennsylvania, the court held that "in view of the proximity of Philadelphia to New York, there is no reason why, in the interest of justice, the plaintiffs' choice of forum should be disturbed"); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000)(refusing to transfer a federal lawsuit to prevent a two-and-a-half hour drive); *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523 (5th Cir. 1988)("This case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States. The minor inconvenience Exxon may suffer in having to litigate this case in Tyler-only 203 miles distant-rather than in Houston, can in no rational way support the notion of abuse of discretion."); *Expoconsul Intern., Inc. v. A/E Systems, Inc.,* 711 F. Supp. 730,

---

[16]     A copy of this decision is attached as Exhibit "I."

736 (S.D.N.Y. 1989)("Defendant's principle <sic> reason for transfer is that its primary location is in Connecticut. It is difficult to accept defendant's claim that this district is inconvenient, since the Connecticut to New York City commute is not overly burdensome and defendant has had no apparent difficulty traveling into this district to transact business.")

There are a multitude of direct flights that make the 349 mile trip from Houston to New Orleans each day. Southwest Airlines has 10 non-stop flights from Houston to New Orleans each day.[17] Continental Airlines has 11 non-stop flights from Houston to New Orleans each day.[18] Given the close proximity between Houston and New Orleans, the easy air commute, and the fact that National Oilwell Varco, LP transacts business in Louisiana, it can hardly argue that a transfer from the plaintiffs' chosen forum in New Orleans is appropriate.

Turning to the Pride witnesses who may be called to testify at trial, Pride is now known as Seahawk Drilling, Inc.[19] At all pertinent times Pride, a subsidiary of Pride International, Inc., had an office and extensive operations in Houma, Louisiana.[20] The present location of most of the Pride witnesses involved with the Mad Dog platform, and more particularly the rig braking system, is unknown. The NOV defendants can only say that the Pride witnesses are "believed" to work or have worked and to reside or have resided in or near Houston, Texas. The subjective belief of the NOV defendants is at odds with a recent statement in HoumaToday.com by Pride International, Inc.'s Regional Vice President for the Gulf of Mexico, Chris Johnston: "South

---

[17]     See Exhibit "J."

[18]     See Exhibit "K."

[19]     See Exhibit "L."

[20]     See Exhibits "L" and "M."

Louisiana has always been the primary base of recruiting and hiring for offshore workers."[21] Moreover, even if some Pride witnesses reside and work in Houston, Texas, as pointed out above, a one-day commute from Houston to New Orleans to appear at trial is hardly inconvenient.

Additionally, assuming for the sake of argument that there are Pride witnesses who will testify at trial and who are located in Houston, Texas, the mere fact that non-party witnesses are not subject to compulsory process is not a controlling factor where, as is the case here, there has been no suggestion by the defendants that any Pride witnesses could not or would not appear at a trial in the chosen forum. *See MHL Tek, LLC v. Nissan Motor Co.,* 2009 WL 440627 at * 5 (E.D. Tex. 2009).[22] Furthermore, even if this Court cannot compel a witness' attendance at trial, neither party is prevented from using the witness' videotaped deposition at trial. *Id.* In *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co., S.A.,* 2007 WL 2461817 (E.D. Tex. 2007),[23] the court stated:

> With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated. This is especially true for witnesses whose credibility cannot seriously be challenged, or a witness with background information needed to establish a basis for more crucial testimony by an expert.

The defendants' argument that BP's expert, Stress Engineering, is located in Houston, is also unpersuasive. The location of expert witnesses is generally entitled to little weight on a motion to transfer venue, *see Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.,* 629 F. Supp.

---

[21]  See Exhibit "N."  Indeed, one witness who may have information relative to the lawsuit is the Pride "Tool Pusher" on the Mad Dog platform, a gentleman named Autrey Boudreaux.  While the plaintiffs do not know the home state of Mr. Boudreaux, they suspect it is Louisiana.

[22]  A copy of this decision is attached as Exhibit "O."

[23]  A copy of this decision is attached as Exhibit "P."

2d 759 (S.D. Tex. 2009), and the plaintiffs will insure that any of their testifying experts appear live at trial.

Likewise, the defendants' argument that there is "a large and cumbersome volume of records" in Houston ignores modern technological advances and does not justify transfer of this case. Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is "stored," it does not follow that transfer to the location of the stored information is more convenient for anyone. *See Aloft Media LLC v. Adobe Sys. Inc.,* 2008 WL 819956 at *4 (E.D. Tex. 2008)("[a]ny convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document");[24] *In re D-Link Corp.,* 183 Fed. Appx. 967, 968 (Fed. Cir. 2006)(refusing to disturb district court's finding, under Fifth Circuit precedent, that where documents could, and likely would, be exchanged electronically, this factor did not support transfer). Defendants have identified no documents located in Houston that cannot be produced electronically.

Moreover, numerous documents pertinent to this case are no doubt located in Norway. As the court in *VCode Holdings, Inc. v. Cognex Corp.*, 2007 WL 2238054 (E.D. Tex. 2007),[25] explained:

> Although the documents relevant to this case are dispersed among several geographic locations-including Massachusetts, Minnesota, California, and Texas-the location of documents is of little consequence since they will almost certainly be produced electronically. *See Symbol Techs., Inc. v. Metrologic Instruments, Inc.,* 450 F. Supp. 2d 676, 678 (E.D. Tex. 2006)(Davis, J.); *Network-1 Sec. Solutions, Inc. v. D-Link Corp. 433,* F. Supp. 2d 795, 799 (E.D. 2006)(Davis,J.) Documents can be transported, either physically or electronically, to Texas just as easily as they can be transported to Minnesota. This factor does not favor transfer.

---

[24]    A copy of this decision is attached as Exhibit "Q."

[25]    A copy of this decision is attached as Exhibit "R."

*See also Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078, 1089 (E.D. Tex. 2000)("As this Court has stated previously, when documents can be easily copied and shipped to the Eastern District, the Court does not consider their present location 'an important factor in the transfer analysis.'")

Finally, the recovered parking brakes are not located in Houston, Texas, but actually are being stored in Schriever, Louisiana.[26]

## B. **Interests of Justice**

Contrary to defendants' argument, the plaintiffs' choice of forum *is* entitled to great deference. The plaintiffs choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." *Young v. Armstrong World Indus., Inc.,* 601 F. Supp. 399, 401 (N.D. Tex. 1984). Although not a dispositive factor, "[t]he plaintiffs privilege to choose, or not be ousted from his chosen forum is highly esteemed." *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). *See also State Street Capital Corp. v. Dente*, 855 F. Supp. 192, 197 (S.D. Tex. 1994)("the plaintiffs choice of forum is entitled to great deference"). In *Mt. Hawley Ins. Co. v. Baddley Chemical Co., Inc.,* 2006 WL 2022909 (S.D. Tex. 2006),[27] the court found the defendant failed to demonstrate that other parties or witnesses would be so greatly inconvenienced by trial as to outweigh the presumption that a plaintiff is the master of his claim and should be permitted to choose his forum.

The fact that BP America and BPX&P are not headquartered in Louisiana is of no moment. The plaintiffs' choice of forum is accorded "substantial weight," even if it is not the plaintiff's principal place of business, if the choice of forum is proximate to plaintiff's place of

---

[26]     See affidavit of Robert Naeger attached as Exhibit "S."

[27]     A copy of this decision is attached as Exhibit "T."

business or relates to the plaintiff's legitimate and rational concerns.   *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759 (D. Del. 1991); *Aerolink Intern., Inc. v. Colonial Parking, Inc.*, 1996 WL 482915 (E.D. Pa. 2006).[28]  *See also Jam Strait, Inc. v. American Products Co., Inc.*, 2002 WL 31246566 (E.D. La. 2002)(denying transfer because "plaintiff's choice of forum, even after taking into consideration the decision to file outside of its 'home turf,' weighs against transfer").

In our case, the cause of action arose out of operations on the Outer Continental Shelf off the coast of Louisiana.  Consequently, Louisiana law will apply as surrogate federal law and the OCSLA specifically provides for venue in Louisiana. *See* 43 U.S.C. § 1333.  The plaintiffs, therefore, have a legitimate and rationale reason for filing suit in Louisiana.

As Judge Duval explained in *Axa Re-Property and Cas. Ins. Co. v. Tetra Technologies, Inc.*, 2002 WL 31738816 (E.D. La. 2002):[29]

> In this case, technically, the plaintiff's choice of forum is not its principal place of business or state of incorporation.  However, *** [t]he Court will give deference to [plaintiff's] choice of forum.  Although not technically its domicile, [plaintiff's] choice of forum is not fortuitous or attenuated with the actual events giving rise to the underlying cause of action.

Additionally, this Court is far more familiar with Louisiana law than the court in Texas. This forum's familiarity with the governing law weighs heavily against transferring the case. *See, e.g., Shelby v. Pods, Inc.*, 2007 WL 4002850 (S.D. Tex. 2007)("The United States district courts of Florida undoubtedly have more familiarity with most of the substantive law that governs this case than this court. This factor weighs heavily in favor of transfer.");[30]  *TGI Friday's Inc. v.*

---

[28]      A copy of this decision is attached as Exhibit "U."

[29]      A copy of this decision is attached as Exhibit "V."

[30]      A copy of this decision is attached as Exhibit "W."

*Great Northwest Restaurants, Inc.,* 2009 WL 2576374 (N.D. Tex. 2009)(forum's familiarity with the governing law weighed against transferring the case).[31]  The fact that Louisiana law, with its civilian principles, is to be applied, makes the case against transfer even stronger than in other cases. As the court in *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, 2006 WL 1215413 (N.D. Ill. 2006),[32] explained:

> Although federal courts are often called upon to decide legal questions involving the laws of various states, and are certainly capable of doing so, the Court notes that Louisiana law is relatively unique among American jurisdictions because of its civil law origins; therefore an Illinois court might expend more resources to analyze such questions than would otherwise be the case or would be the case if a Louisiana court were called upon to analyze a legal question from one of the forty-nine common law tradition states.

Further, while application of the "first-to-file" rule is not dispositive of the present motion, it is a relevant component of the "interests of justice" factor. *Texas Instruments v. Micron Semiconductor, Inc.,* 815 F. Supp. 994, 997 (E.D. Tex. 1993). *See also MDI, Inc. v. Phan,* 2007 WL 1512031 (W.D. Tex. 2007).[33]  Under the "first-to-file" rule, the later-filed action defers to the prior-filed one. *Nelson v. Grooms,* 307 F.2d 76, 78 (5th Cir. 1962). "To avoid the application of the first-to-file rule, the party avoiding its application must show the existence of 'compelling circumstances.'" *Datamize, Inc. v. Fidelity Brokerage Services, LLC*, 2004 WL 1683171 (E.D. Tex. 2004).

The judicial system inherently provides a plaintiff with his choice of forum:

> The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the

---

[31]  A copy of this decision is attached as Exhibit "X."

[32]  A copy of this decision is attached as Exhibit "Y."

[33]  A copy of this decision is attached as Exhibit "Z."

rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

In support of their motion to transfer, the defendants have also argued that the Eastern District of Louisiana is more congested. In support of their position, they have referred this Court to the fact that the median amount of time from filing to disposition in the Eastern District of Louisiana is three months longer than in the Southern District of Texas.[34] Although courts may consider calendar congestion in ruling on a motion to transfer, relative congestion of the respective courts' dockets is not a factor of great importance. *Yocham v. Novartis Pharmaceuticals Corp.*, 565 F. Supp. 2d 554 (D.N.J. 2008). More importantly, while the defendants have cited the Court to a statistic that favors their position -- median time from filing to *disposition*, they failed to mention that the median time from filing to *trial* was 17.6 months in the Eastern District of Louisiana, compared to 18.8 months in the Southern District of Texas.[35] Thus, based on the most recent court statistics, cases filed in the Eastern District of Louisiana actually move to trial faster than those filed in the Southern District of Texas. The average time from filing to trial is a much better gauge of the relative pace of cases in the two districts and actually weighs against transfer.

A final consideration in the transfer analysis concerns the legal fees to be incurred in the case. It will be cheaper to litigate the case in Louisiana, because, in general, the costs of legal representation and litigation are higher in Houston. In *Rooster Products Intern., Inc. v. Custom*

---

[34]  Defendants refer the Court to Exhibit "12" attached to the NOV defendants' motion which is supposed to be the Federal Case Management Statistics for 2008. However, it is not.

[35]  See Exhibit "AA."

*Leathercraft Mfg. Co., Inc.*, 2005 WL 357657 (W.D.Tex. 2005),[36] the court considered this factor in concluding that a transfer was not warranted under Section 1404(a).

## CONCLUSION

The plaintiffs could have brought this action in Texas or Louisiana. They chose Louisiana. While it is true that many individuals who had some connection with the events leading up to this lawsuit are located in Houston, Texas, most of the *key* witnesses are located in Norway. To the extent that there are some witnesses located in Houston who will testify at trial, it can hardly be said that the one hour air commute to appear at trial would be a significant inconvenience. Moreover, videotaped depositions could be taken of any non-party witnesses if they were to refuse to voluntarily appear at trial in Louisiana.

Importantly, the plaintiff's choice of forum is accorded great weight. This is especially true when the plaintiff has a rationale and legitimate reason for filing suit in the chosen forum. Here, the plaintiffs have a rational and legitimate reason for filing suit in Louisiana. The harm was caused on the Outer Continental Shelf off the coast of Louisiana and Louisiana law will apply. The plaintiffs retained Louisiana lawyers to represent them for this very reason. Obviously, a Louisiana court will have a better understanding of Louisiana law than a Texas court.

The defendants have not met their heavy burden of establishing significant inconvenience in having this case proceed to trial in New Orleans, Louisiana. For all of the above reasons, the defendants' motion to transfer should be denied.

---

[36]     A copy of this decision is attached as Exhibit "BB."

-17-

Respectfully submitted,


/s/ Carol Welborn Reisman
S. Gene Fendler, T.A. (Bar # 5510)
David W. Leefe (Bar # 1479)
Carol Welborn Reisman (Bar # 20410)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
sgfendler@liskow.com
dwleefe@liskow.com
cwreisman@liskow.com

*Attorneys for BP America Production
Company, BP Exploration & Production
Inc., and American Home Assurance
Company*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of February, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record. I further certify that, on the same day, I mailed, faxed, or e-mailed the foregoing document and notice of electronic filing to all attorney(s) of record who are non-CM/ECF participants.


/s/ Carol Welborn Reisman